## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARK OLSZEWSKI, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 1:17-cv-00620 |
| DITECH FINANCIAL, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

**NOW COMES** the Plaintiff, Mark Olszewski ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Ditech Financial, LLC, ("Ditech") Experian Information Solutions, Inc., ("Experian") and TransUnion, LLC, ("Transunion") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in the Northern District.

1

**PARTIES**

4.   Plaintiff Mark Olszewski is a consumer and a natural person over 18-years-of-age who, at all times relevant, owned the property located at 3455 West Berteau Avenue, Unit 3C, Chicago, Illinois 606018 ("subject property").

5.   Defendant Ditech is a limited liability company with its principal office located at 3000 Bayport Drive, Suite 880, Tampa, Florida 33607. Its registered agent in Illinois is C T Corporation System located at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604. Ditech is a mortgage company in the business of servicing loans and collecting debts owed to others across the country, including Illinois. Ditech is a furnisher of information to the major credit reporting agencies, including Experian and Transunion.

6.   Defendant Experian is a corporation incorporated in the state of Ohio and is authorized to do business in the State of Illinois. Experian is in the business of compiling and maintaining files on consumers to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

7.   Defendant Transunion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. Transunion is regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

**BANKRUPTCY CASE**

8.  In March 2007, Plaintiff executed a mortgage and note in the amount of $198,000.00 in favor of A & N Mortgage Services, Inc., secured by the subject property.

9.  At the closing, Plaintiff signed a Notice of Assignment, Sale or Transfer of Servicing Rights transferring servicing rights to CitiMortgage effective on May 1, 2007.

10. On December 12, 2012, Plaintiff refinanced and executed a mortgage and note in the amount of $184,850.00 ("subject loan" or "subject debt") in favor of CitiMortgage secured by the subject property.

11. On May 22, 2015, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 15-18200 ("bankruptcy").

12.  Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to CitiMortgage, in the amount of $177,208.00, secured by the subject property.

13. Experian and Transunion were also listed in Plaintiff's bankruptcy Schedule F for notice purposes.

14. Also on May 22, 2015, Plaintiff filed his Chapter 13 Plan.

15. Plaintiff's Original Plan proposed to treat CitMortgage's claim as follows:

> "Debtor is surrendering the real property located at 3435 W. Berteau Avenue, Unit 3C, Chicago, Illinois to CitiMortgage, Inc. in full satisfaction of its claims."

16. On May 29, 2015, by virtue of listing CitiMortgage as a creditor, the Bankruptcy Noticing Center ("BNC") served CitiMortgage with notice of Plaintiff's bankruptcy filing and Plaintiff's Chapter 13 Plan.

17. CitiMortgage did not file any objection to Plaintiff's Chapter 13 Plan.

18. On June 19, 2015, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative of CitiMortgage appeared at the 341 Meeting of Creditors.

19. On September 2, 2015, the Chapter 13 Plan was confirmed by the Honorable Judge Jack B. Schmetterer.

20. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

21. On January 22, 2016, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt.

22. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor..."

23. On January 24, 2016 the BNC served CitiMortgage with the Order of Discharge.

24. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by CitiMortgage or any other party.

25. On January 25, 2016, Plaintiff's bankruptcy case closed and the Trustee was discharged.

26. Plaintiff's personal liability on the subject loan was extinguished via his bankruptcy discharge, thus terminating the business relationship with CitiMortgage and any of its successors and assigns.

27. Subsequent to Plaintiff's bankruptcy discharge, Ditech acquired the servicing rights to the subject debt.[1]

28. Ditech knew that the subject debt was discharged in Plaintiff's bankruptcy on January 22, 2016.[2]

---

[1] Pursuant to Plaintiff's Chapter 13 Plan, no payments were to be made to CitiMortgage or any of its successors and assigns, including Ditech, as Plaintiff's Confirmed Plan surrenders the subject property to CitiMortgage in full satisfaction of its claims.

[2] Plaintiff's bankruptcy is easily accessible as it is public record. Upon information and belief, Ditech's loan boarding documents will reveal that Ditech had actual knowledge of Plaintiff's Chapter 13 bankruptcy filing and subsequent discharge.

CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EXPERIAN AND TRANSUNION

29. In July 2016, after receiving his bankruptcy discharge, Plaintiff pulled his Experian and Transunion credit reports to make sure all creditors were reporting accurately. Plaintiff discovered that Defendants were reporting the subject loan in default with a high balance, a high past due amount, a scheduled payment amount, and post-discharge derogatory information.

30. The reporting of the subject loan was inaccurate, materially misleading, and incomplete because the subject loan was discharged in Plaintiff's bankruptcy and should be reporting with a zero balance, a zero past due amount, a zero monthly payment amount, and no post-discharge derogatory information.[3]

### a. Plaintiff's Dispute Letter to Experian and Transunion

31. On August 4, 2016, Plaintiff sent detailed dispute letters to Experian and Transunion requesting that his credit report be updated to reflect a zero balance and the discharged status of all the Ditech trade line. Plaintiff attached his bankruptcy discharge order to his dispute.

32. Among other items, Plaintiff's dispute letter stated the following:

a. "Please update and investigate any incorrect information into the following listed account: Ditech Fin. Loan number 00004070XXXX;"
b. "This account has been discharged in my case #15-18200, filing date 05/22/2015 & my discharge order date of 01/22/2016;"
c. "I am requesting you to activate the Automated Dispute Resolution System program with respect to this written notice…;"
d. "I request that you forward this letter, and the enclosures to the creditor listed above;" and
e. "Please, let me know if you didn't send my dispute letter and supporting documents to the creditor. I request that you promptly advise me so that I can take additional steps to protect myself."

---

[3] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format."

33. Plaintiff sent his dispute letter to Experian and Transunion via certified mail, return-receipt requested. [4]

34. Upon information and belief, Ditech received notice of Plaintiff's dispute letter and all enclosed supporting documents from Experian and Transunion within five days of Experian and Transunion receiving Plaintiff's dispute letters. *See* 15 U.S. Code §1681i(a)(2).

**b. Transunion's Response to Plaintiff's Dispute Letter**

35. On August 15, 2016, Transunion responded to Plaintiff's dispute letter by stating:

> "Based on the information provided to Transunion, our records show that the information you disputed does not currently appear on your Transunion credit report."

36. On September 6, 2016, Plaintiff diligently accessed his Transunion credit report to verify the accuracy of his credit report.

37. Specifically, Transunion reported the subject loan as follows:

**Open Accounts**

DITECH

| | Equifax | TransUnion | Experian |
|---|---|---|---|
| Account Type: | | Mortgage | |
| Account Number: | | 511000407XXXX | |
| Payment Responsibility: | | Individual | |
| Date Opened: | | 12/2012 | |
| Balance Date: | | 07/2016 | |
| Balance Amount: | | $177,208 | |
| Monthly Payment: | | $1,220 | |
| High/Limit: | | $184,850 | |
| Account Status: | | Late Over 120 Days | |
| Past Due Amount: | | $16,493 | |
| Comments: | | COLLATERAL: FRD752619535 | |

38. Despite Transunion's representation that Plaintiff's credit report was not reporting the inaccurate information, Transunion and Ditech continued to report the subject loan with a

---

[4] Experian and Transunion received Plaintiff's dispute letters with all relevant information attached on August 11, 2016.

"Balance" of $177,208, an "Amount Past Due" of $16,493, a "Monthly Payment" of $1,220, and an "Account Status" of late over 120 days.[5]

39. Moreover, Transunion and Ditech failed to report the Ditech trade line as discharged in bankruptcy, including the failure to communicate that Plaintiff disputed the subject debt.

40. Transunion is currently reporting the Ditech trade line on Plaintiff's credit report as follows:



41. The reporting of the Ditech trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is still personally responsible for, delinquent, and obligated to pay a balance and monthly payment amount. However, Plaintiff is no longer

---

[5] Pursuant to the CDIA guidelines, a Chapter 13 bankruptcy, once completed and discharged, should be reported as "Discharged through BK Chapter 13," a "Current Balance" of Zero, a "Scheduled Monthly Payment Amount" of Zero, and an "Amount Past Due" of Zero. *See* 2013 CDIA Manual; page 6-21.

personally liable on the subject loan as Plaintiff's Chapter 13 bankruptcy was discharged on January 22, 2016.[6]

### c. Experian's Response to Plaintiff's Dispute Letter

42. On August 19, 2016, Experian responded to Plaintiff's dispute letter, failing to adequately investigate the Ditech trade line.

43. To verify that Plaintiff's credit was reporting accurately, Plaintiff accessed his Experian credit report to ensure the accuracy of his credit report on September 6, 2016, which reported as follows:

| DITECH FINANCIAL LLC | Equifax | TransUnion | Experian |
|---|---|---|---|
| Account Type: | Installment | | Mortgage |
| Account Number: | 511000407XXXX | | 511000407XXXX |
| Payment Responsibility: | Individual | | Individual |
| Date Opened: | 12/2012 | | 12/2012 |
| Balance Date: | 05/2015 | | 07/2016 |
| Balance Amount: | $0 | | $177,208 |
| Monthly Payment: | $0 | | $1,220 |
| High/Limit: | | | $184,850 |
| Account Status: | WageEarnerPlan | | Late Over 120 Days |
| Past Due Amount: | $0 | | $16,493 |
| Comments: | BANKRUPTCY CHAPTER 13 | | OPEN ACCOUNT DELINQUENT 180 DAYS PAST DATE LAST REPORTED DELINQUENCIES: 07/2016=M6 LAST PAID: 05/2015 |

44. Despite Experian's alleged deletion of the Ditech trade line in its August 19, 2016 response to Plaintiff's dispute, the report Plaintiff accessed showed that Experian and Ditech continued to report the subject loan with a "Balance Amount" of $172,208, a "Past Due Amount" of $16,493, and a "Monthly Payment" of $1,220.[5]

45. The Ditech trade line also indicated that the subject debt is an "OPEN ACCOUNT DELINQUENT 180 DAYS PAST DUE" after Plaintiff's discharge on January 22, 2016.

---

[6] Pursuant to Plaintiff's Chapter 13 Plan, no payments were to be made to Ditech, as Plaintiff's Confirmed Chapter 13 Plan surrenders the subject property to CitiMortgage in full satisfaction of its claims.

46. Moreover, Experian and Ditech failed to report the Ditech trade line as discharged in bankruptcy, including the failure to communicate that Plaintiff disputed the subject debt.

47. Experian is currently reporting the Ditech trade line on Plaintiff's credit as follows:



48. The reporting of the Ditech trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is still personally responsible for, delinquent, and obligated to pay a balance and monthly payment amount. However, Plaintiff is no longer personally liable on the subject loan as Plaintiff's Chapter 13 bankruptcy was discharged on January 22, 2016.[6]

**IMPACT OF CONTINUING
INACCURATE REPORTING ON PLAINTIFF'S CREDIT FILES**

49. As of January 25, 2017, Defendants continue to report the subject debt incorrectly, including an increased "Amount Past Due" of $24,306 on Plaintiff's Experian and Transunion reports.

50. The erroneous reporting of the Ditech account paints a false and damaging image of Plaintiff. After it was provided notice by Plaintiff, Experian, and Transunion, Ditech did not update the Ditech trade line to accurately reflect the discharged status of the subject loan.

51. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, credit capacity, and his ability to move forward after his bankruptcy discharge.

52. The inaccurate reporting of subject loan had significant adverse effects on Plaintiff's credit rating because it created a false impression that Plaintiff was still personally liable and obligated to pay on the subject loan, rendering Plaintiff a high risk consumer and damaging his creditworthiness.

53. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and mental and emotional pain and suffering.

54. Ultimately, Plaintiff has desired to take advantage of credit opportunities, most notably, a line of credit from Citibank, but has been denied because of Defendants' failure to report only accurate information about Plaintiff.

55. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to force compliance with the Fair Credit Reporting Act.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST DITECH)

56. Plaintiffs restates and realleges paragraphs 1 through 55 as though fully set forth herein.

57. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

58. Ditech is a "person" as defined by 15 U.S.C. §1681a(b).

59. Ditech is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

60. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

61. Ditech violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Experian, Transunion, and Plaintiff.

62. Ditech violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, namely Plaintiff's discharge order, provided by Experian, Transunion, and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

63. Had Ditech reviewed the information provided by Experian, Transunion, and Plaintiff, it would have corrected the inaccurate designation of the subject loan, transmitting the correct information to Experian and Transunion. Instead, Ditech wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

64. Ditech violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation or reinvestigation of Plaintiff's disputes with Experian and Transunion.

65. Ditech violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Experian and Transunion after being put on notice and discovering inaccurate, misleading, and incomplete reporting with respect to the subject loan.

66. Ditech violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's credit files.

67. Ditech failed to conduct a reasonable investigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit

file within 30 days of receiving notice of a dispute from Experian and Transunion under 15 U.S.C. §1681i(a)(1).

68. Despite the blatantly obvious errors on Plaintiff's credit file, and Plaintiff's efforts to correct the errors, Ditech did not correct the errors or trade line to report accurately. Instead, Ditech wrongfully furnished and re-reported the inaccurate, misleading, and incomplete information after Plaintiff's dispute to one or more third parties.

69. Moreover, Ditech failed to report the subject loan as discharged in bankruptcy, including the failure to communicate that Plaintiff disputed the subject loan.

70. Ditech's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiff. *Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142* (4th Cir. 2008); see also *Freedom v. CitiFinancial, LLC, 2016 U.S. Dist. LEXIS 97533.* (7th Cir. 2016).

71. A reasonable investigation by Ditech would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported on Plaintiff's credit file.

72. Had Ditech taken steps to investigate Plaintiff's valid disputes or Experian and Transunion's requests for investigation, it would have permanently corrected the erroneous, misleading, and incomplete credit reporting. Plaintiff provided all relevant information in his request for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

73. By deviating from the standards established by the mortgage servicing industry and the FCRA, Ditech acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian and Transunion.

**WHEREFORE,** Plaintiff MARK OLSZEWSKI respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST EXPERIAN)

74. Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

75. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

76. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

77. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

78. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

79. Plaintiff provided Experian with all relevant information and documentation in his request for investigation and reinvestigation to reflect his bankruptcy discharge and that he is no longer personally liable for the subject loan.

80. Experian prepared Plaintiff's credit reports containing inaccurate, materially misleading, and incomplete information by reporting the subject loan with an amount past due, an owed balance, a monthly payment amount, and multiple payment history delinquencies, when in fact Plaintiff had received a bankruptcy discharge, owed no past due amounts, no balances, and no scheduled payment amount on the subject loan.

81. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had filed and was discharged in bankruptcy, no longer owed a balance, no longer had an amount past due, and did not have a scheduled payment amount.

82. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. On numerous occasions, Experian has prepared a patently false, materially misleading, and incomplete consumer report concerning Plaintiff. Experian had actual knowledge of Plaintiff's bankruptcy discharge after Plaintiff included his bankruptcy discharge order attached to his detailed dispute letter.

83. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information on Plaintiff's credit files.

84. Had Experian taken any steps to investigate Plaintiff's valid dispute, it would have determined that subject loan and other debts were discharged in Plaintiff's bankruptcy on January 22, 2016.[7]

85. Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Ditech. Upon information and belief, Experian also failed to include all relevant information as part of the notice to Ditech regarding Plaintiff's dispute that Experian received from the Plaintiff.

86. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Ditech with regard to the subject loan.

87. Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

88. Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Ditech that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit scores.

89. Since all of Plaintiff's other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," Experian should have investigated why the Ditech trade line is reporting anything other than a $0 past due amount, $0 balance amount, or a $0 monthly payment amount.

---

[7] Experian's own "Public Records" was reporting Plaintiff's bankruptcy case as discharged.

90. Moreover, after Plaintiff's written detailed dispute, Experian had specific information related to Plaintiff's bankruptcy case and subsequent discharge order, which included the subject loan.

91. Experian knew that the inaccurate designation of the subject loan on Plaintiff's credit file under the Ditech trade line as delinquent, in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing his bankruptcy.

92. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

93. Despite actual knowledge that Plaintiff's credit file was erroneous, Experian readily sold Plaintiff's inaccurate, misleading, and incomplete report to one or more third parties, thereby misrepresenting Plaintiff and, ultimately, Plaintiff's creditworthiness.

94. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

95. It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

96. Experian's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting his credit information.

97.  Experian acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually delinquent, in default, and owing a high past due balance on the subject loan after Plaintiff was discharged in bankruptcy.

98.  Upon information and belief, Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false, materially misleading, and incomplete information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

99.  As stated above, Plaintiff was severely harmed by Experian's conduct.

**WHEREFORE**, Plaintiff MARK OLSZEWSKI respectfully prays this Honorable Court for the following relief:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b.  Order the deletion of all adverse credit reporting;
c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d.  Award each Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and
g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST TRANSUNION)

100. Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

101. Transunion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

102. Transunion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

103. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

104. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

105. Plaintiff provided Transunion with all relevant information and documentation in his request for investigation and reinvestigation to reflect his bankruptcy discharge and that he is no longer personally liable for the subject loan.

106. Transunion prepared Plaintiff's credit reports containing inaccurate, materially misleading, and incomplete information by reporting the subject loan with an amount past due, an owed balance, a monthly payment amount, and multiple payment history delinquencies, when in fact Plaintiff had received a bankruptcy discharge, owed no past due amounts, no balances, and no scheduled payment amount on the subject loan.

107. Moreover, Transunion failed to report the Ditech trade line as discharged in bankruptcy, including the failure to communicate that Plaintiff disputed the subject debt.

108. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had filed and was discharged in bankruptcy, no longer owed a balance, no longer had an amount past due, was not delinquent, and did not have a scheduled payment amount.

109. Transunion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. On numerous occasions, Transunion has prepared a patently false, a materially misleading, and an incomplete consumer report concerning Plaintiff.

Transunion had actual knowledge of Plaintiff's bankruptcy discharge after Plaintiff included his bankruptcy discharge order attached to his detailed dispute letter.

110. Transunion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information on Plaintiff's credit files.

111. Had Transunion taken any steps to investigate Plaintiff's valid dispute, it would have determined that subject loan and other debts were discharged in Plaintiff's bankruptcy on January 22, 2016.

112. Transunion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Ditech. Upon information and belief, Transunion also failed to include all relevant information as part of the notice to Ditech regarding Plaintiff's dispute that Transunion received from the Plaintiff.

113. Transunion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Ditech with regard to the subject loan.

114. Transunion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

115. Transunion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Ditech that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit scores.

116. Since all of Plaintiff's other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," Transunion should have investigated why the Ditech trade line is

reporting anything other than a $0 past due amount, $0 balance amount, or a $0 monthly payment amount.

117. Moreover, after Plaintiff's written detailed dispute, Transunion had specific information related to Plaintiff's bankruptcy case and subsequent discharge order, which included the subject loan.

118. Transunion knew that the inaccurate designation of the subject loan on Plaintiff's credit file under the Ditech trade line as delinquent, in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing his bankruptcy.

119. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

120. Despite actual knowledge that Plaintiff's credit file was erroneous, Transunion readily sold Plaintiff's inaccurate, misleading, and incomplete report to one or more third parties, thereby misrepresenting Plaintiff and, ultimately, Plaintiff's creditworthiness.

121. By deviating from the standards established by the credit reporting industry and the FCRA, Transunion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

122. It is Transunion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

123. Transunion's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting his credit information.

124. Transunion acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually delinquent, in default, and owing a high past due balance on the subject loan after Plaintiff was discharged in bankruptcy.

125. Upon information and belief, Transunion has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false, materially misleading, and incomplete information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

126. As stated above, Plaintiff was severely harmed by Transunion's conduct.

**WHEREFORE**, Plaintiff MARK OLSZEWSKI respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion of all adverse credit reporting;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award each Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: January 26, 2017                    Respectfully Submitted,

                                           /s/ Omar T. Sulaiman
                                           Omar T. Sulaiman, Esq.
                                           *Counsel for Plaintiff*
                                           Sulaiman Law Group, Ltd.
                                           900 Jorie Blvd, Ste 150
                                           Oak Brook, IL 60523
                                           Phone: (630) 575-8181
                                           Fax: (630) 575-8188